CIVETTI v. AMERICAN HATTERS' & FURRIERS' CORPORATION.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—ACTIONS—ADMISSIBILITY OF EVIDENCE—COMPETENCY—CUSTOMS AS TO GUARDING MACHINERY.

In an action for personal injuries received in defendant's factory in another state, testimony of one who had no knowledge concerning factories in that state as to the custom with respect to guarding revolving shafts in the city of New York was incompetent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 921.]

2. EVIDENCE—OPINION EVIDENCE—DANGEROUS APPLIANCES.

In an action by a servant for personal injuries caused by her coming in contact with a revolving shaft, which was so situated that it was not necessary for her to come within dangerous proximity to it in doing her work, her doing so being the result of her choosing a dangerous method of work, which was forbidden by the master, it was error to permit a witness, in answer to a hypothetical question, to testify that the shaft was a dangerous appliance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2248.]

3. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF MASTER—SUFFICIENCY OF EVIDENCE.

In a personal injury action by a servant, evidence examined, and held not sufficient to support a verdict finding defendant negligent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.]

4. SAME—INSTRUCTING SERVANT—YOUTHFUL EMPLOYÉ—DISOBEDIENCE OF ORDERS.

It is the duty of a master, employing a 14 year old girl to work near machinery, to give her proper instructions and to warn her of any danger that would be apprehended by a reasonably prudent employer. It is the servant's duty to observe the instructions, and, in the absence of knowledge that she is not, the master has a right to assume that she is conforming to them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 314.]

5. SAME—TRIAL—DIRECTING VERDICT ON SPECIAL FINDINGS.

In an action by a servant for injuries caused by catching her hair in a revolving shaft while engaged in work which required her to stand on a step of a table which would not bring her into dangerous proximity to the shaft, special jury findings on conflicting evidence that she had been instructed by the foreman to keep her hair braided, that her hair was properly braided at the time of the accident, and that she was instructed by the foreman to stand on the step of the table while doing her work, and that the accident would not have happened if she had not climbed up on the table, did not entitle defendant to the direction of a general verdict.

6. APPEAL—DECISIONS REVIEWABLE—VERDICT—SPECIAL FINDINGS — PART OF RECORD.

The entry of a formal order denying judgment on special findings is unwarranted, since Code Civ. Proc. § 1187, expressly provides that the

special verdict shall form part of the record; and hence an exception to the court's refusal to direct a general verdict or judgment thereon is reviewable, the same as other exceptions taken on the trial.

Appeal from Trial Term.

Action by Matilda Civetti, an infant, by Alvin Ohlsen, her guardian ad litem, against the American Hatters' & Furriers' Corporation. From a judgment for plaintiff, and orders denying motions for a new trial and for judgment on special findings, defendant appeals. Appeal from order denying judgment on special findings dismissed, judgment and order denying new trial reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Selden Bacon, for appellant.
James S. Darcy (George M. Wright, on the brief), for respondent.

LAUGHLIN, J. This action is brought to recover damages for personal injuries sustained by the plaintiff on the 6th day of April, 1906, alleged to have been caused by the negligence of the defendant. The plaintiff was 14 or 15 years of age, and had been in the employ of the defendant in the same capacity for a period of from a week to a month or more. The defendant is a domestic corporation, but it was operating a plant at Danbury, Conn., in which it was engaged, among other things, in tanning rabbits' skins. The duties of the plaintiff consisted in placing the skins on a wooden pole about 1 inch in diameter and 6 feet in length, and then elevating the pole to a position under the ceiling, with each end resting over a slat nailed on the underside of rafters or joists and at right angles thereto. Her work was one at a movable table, 44 inches in length, the top of which was about 3 feet above the floor. In front of the table and attached thereto was a step 14 inches above the floor, upon which she was required to stand. From each end of the table, at the rear, a strip of wood projected about 1 foot above, with the upper end notched. The pole upon which the skins were to be placed, rested in these notches. She was required to stand on the step of the table, and take the skins from the table, and place them across the pole. The rafters or joists extended across the room in which she was working, and these strips, fastened to the underside thereof, extended from the front to the rear of the room, about 5 feet 8 inches apart, making two parallel and adjoining spaces on which to hang the poles. She worked from the rear to the front of the room, moving the table a short distance from time to time as her convenience required; and when standing on the step to the table at her work she was facing the rear of the room. On her left there was a drying machine, or "baker," fully inclosed like a rough box, extending 2 feet 10 inches above the floor, and extending completely under one of the spaces in which the poles with skins were required to be hung, and about 1 foot under the second space under which the table was. The plaintiff would step from the step on which she was standing at the table over onto the drying machine in putting poles in place in the space above it. The proper position for the table, to make it most convenient in doing the work, was

with one end against or close to the drying machine; for in that way she could step over onto the drying machine, and could, without changing her position, put the poles in place directly above the table. Five or six skins, according to their size, would be placed on the pole, which, with the skins, would weigh about six pounds, and then the plaintiff would take hold of the pole with both hands, about 18 inches apart and equidistant from the ends, and lift it into place upon the slats. On account of acid on the skins she was obliged to handle them with gloves; and there is some evidence indicating that in lifting the pole she would keep her head away, lest the acid might drop on her face. From the floor to the top of the strips on which the poles rested was about 7 feet 1¾ inches. The length of the room was about 25 feet. From the rear, a shaft eleven-sixteenths of an inch in diameter projected toward the front 13 feet. It was 6 feet 10⅞ inches above the floor, being just under the joists or rafters and running parallel with and 1 foot distant from the slat to the right of the plaintiff when standing at the table. There were pulleys attached to this shaft, and when the machinery was in motion it revolved with considerable rapidity; the precise number of revolutions per minute not being shown.

The plaintiff had charge of moving the table at which she worked from the rear toward the front, as already stated, as her convenience required. When first directed to work at the table, she was instructed by defendant's foreman to stand on the step and put the poles in place on the slats from that position, which she appears to have been able to do conveniently, and usually did. No specific instructions were given to her with respect either to where to place the table or to keeping it from under the shaft. At the time of the accident, instead of placing the table on the floor between the lines of the slats, plaintiff unnecessarily placed it under the revolving shaft, and, instead of standing on the step to put the pole with the skins on in place above, climbed upon and stood upon the table while putting it in place. After she had put the pole in place, and, according to her testimony, while her hands were still touching the skins, she felt her hair pulling, and her hair was wound around the shaft and torn off, taking with it a large part of the scalp. As already observed, there was no necessity for her to come within dangerous proximity to the shaft in doing her work; and, if she had placed the table where she could have done her work with greatest ease and convenience and expedition, she would not have been sufficiently near the shaft to have met with the injury. Her evidence is inconsistent and conflicting on some very material points. She testifies that she was told to stand on the step while putting the poles in place, and says that she never stood on the table while the defendant's foreman or superintendent was present; and then she contradicts this and says that he often saw her standing on the table. We have not overlooked the claim that her testimony must be weighed in the light of the injuries she received. She denied that she was told to keep her hair braided; but on conflicting evidence the jury found specially that she had been so instructed by the foreman. Likewise, on conflicting evidence, the jury found that her hair was properly braided at the time of the accident, which

we think is quite improbable, unless, after placing the pole in position and having nothing further to do on the table,· excepting to get down onto the step, she unnecessarily and carelessly changed her position and brought her head in contact with the shaft. The jury also found specially that she was instructed by the foreman to stand on the step of the table while hanging the poles; and they also found that the accident would not have happened if she had not climbed up on top of the table. Evidence was given on the part of the defendant tending to show that she was warned of the danger; but this she denied.

There was no law in the state of Connecticut requiring machinery to be guarded, excepting as directed by a factory inspector; and it appears that this plant had been in operation for a long time in the same condition, and that no directions had been given to guard the shaft, although the machinery had been frequently inspected. The court, under objection and exception duly taken by the defendant, permitted a witness, who had no knowledge concerning factories in the state of Connecticut, to testify to the custom with respect to guarding shafts in the city of New York, where such matters are regulated by a statute of the state. The court also permitted the same witness to answer a hypothetical question, embodying the circumstances under which the plaintiff was working, as to whether the shaft was a dangerous appliance, and the witness answered in the affirmative. This evidence was likewise received over the defendant's objection that it was incompetent, irrelevant, and immaterial, and under its exception. The evidence thus given was clearly incompetent and most prejudicial, and would alone require a reversal.

We deem it our duty, however, to express the opinion that the verdict is against the weight of the evidence, in so far as the jury found the defendant guilty of negligence, and is doubtless the result of sympathy for the unfortunate girl, owing to the nature of the injuries sustained. Under the law of Connecticut the defendant had the right to employ the plaintiff in this work. It was the duty of the defendant to give her proper instructions and to warn her of any danger that would be apprehended by a reasonably prudent employer. If she was specifically instructed to stand upon the step in hanging the skins, and could conveniently hang them while standing in that position, and she was warned of the danger of having her hair loose on account of the shaft or other machinery about the place, it was her duty to observe those instructions, and, in the absence of knowledge that she was doing the work differently, the defendant would have a right to assume that she was conforming to the instructions given. In view of her age, however, if she did not receive proper instructions and warning, or if the defendant or its foreman knew that she was violating the instructions and standing upon the table, in dangerous proximity to the shaft, or placing it under the shaft, the liability of the defendant might present a question for the jury. The special findings of the jury, to which reference has been made, in favor of the defendant, did not entitle it to the direction of a general verdict.

It appears that a formal order was entered denying defendant's motion for judgment on the special findings of the jury which were re-

ported with the general verdict. The entry of that order was unwarranted, and the appeal therefrom should be dismissed, as the special verdict becomes part of the record (Code Civ. Proc. § 1187), and an exception to the refusal of the court to direct a general verdict or judgment thereon is reviewable in the same manner as are other exceptions taken on the trial.

It follows that the appeal from the order denying defendant's motion for judgment on the special findings should be dismissed, and the judgment and order denying the motion for a new trial should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.